2021 AUG 11  PM 2:07
FILED
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

John Ageeb
Plaintiff *in Propria Persona*
3205 Chelsea Street
Orlando, Florida 32803
(407) 325-5602
jeebstone@protonmail.com

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

JOHN AGEEB

    PLAINTIFF

v.

                            CASE NO. 6-21-cv-1286-PGB-DCI

WHOLE FOODS MARKET GROUP, INC.

    DEFENDANT

_____/

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**UNDER AMERICANS WITH DISABILITIES ACT**

Plaintiff John Ageeb sues the defendant WHOLE FOODS MARKET GROUP, INC. for declaratory and injunctive relief under Title I of the Americans with Disabilities Act and alleges the following:

**PLAIN STATEMENT**

Defendant is an employer subject to the provisions of Title I of the ADA, 42 U.S.C. §12101 et seq. ("Title I"), and its implementing regulations, 29 C.F.R. Part §1630.2.

The defendant has discriminated against the plaintiff who is regarded as having a disability as defined under 29 CFR §1630.2(g)(3) and an impairment as defined under 29 CFR §1630.2(h) in violation of Title I of the ADA and its implementing regulations.

Individuals with disabilities, including but not limited to those regarded as having a contagious disease who are impaired from engaging in one or more major life activities, 29 CFR §§1630.2(i) and (j)(5)(i), includes individuals such as the plaintiff whose disabilities are aggravated by certain mitigation measures.

1         The plaintiff was employed by the defendant from the date of April 5, 2011 until the
2   defendant terminated his employment on the date of December 17, 2020.  The defendant has
3   created new conditions for employment that include implementation of medical equipment
4   (face masks or devices) and daily medical exams (temperature checks) and separation by six
5   feet from all workers which are mitigation measures 29 CFR Part 1630.2(j)(5)(i).  These
6   measures offered by the defendant are based upon the presumption that the plaintiff is
    regarded as having a disability related to the immune system.

7         The plaintiff has disability that impairs his ability to engage in one or more major life
8   activities and the defendant has denied him equal access to one or more employment
9   opportunities or programs offered by the defendant unless he submits to certain mitigation
10  measures without informed consent.

11        The plaintiff has explained and disclosed to the defendant that has a disability that
12  substantially limits his ability to engage in one or more major life activities and has requested
13  reasonable modifications. As stated before, the defendant is additionally creating a disability
14  upon the plaintiff by regarding the plaintiff as disabled and limiting the accommodation to the
15  defendant's chosen mitigation method.   The plaintiff is not required to accept any
    modifications; 29 CFR Part 1630.9(d).   The defendant has not indicated that the
16  accommodations offered are reasonable or necessary to enable the plaintiff to perform
17  essential functions of the employment position held.

18        Defendant has retaliated against Plaintiff by trying to coerce him into accepting a non-
19  paid work status that would have ended his recourse to sue for ADA rights disguised under
20  the facade of "being sent home on administrative leave without pay", by falsely labeling his
21  requests for accommodation as "gross insubordination" in order to fire him, and by penalizing
22  him with termination of his employment.  Defendant has retaliated with other methods of
23  intimidation and coercion.

24        The defendant has discriminated against the plaintiff based upon disability.

25        Specifically, the defendant has failed to ensure the equal access or accessibility of its
26  premises located at 1030 N. Orlando Avenue, Winter Park, Florida and, as a result, the plaintiff
27  has been prevented from enjoying equal access and the benefits of employment enjoyed by
28  other employees.

Additionally, the defendant has retaliated against the plaintiff by threatening him with the termination of his employment and other methods of intimidation and coercion. The defendant did in fact terminate the plaintiff's employment on the date of December 17, 2020.

Such discrimination persists notwithstanding the existence of readily available, well-established, accommodations, including but not limited to refraining from engaging with the plaintiff in any conversation pertaining to the application of such medical interventions and/or allowing the plaintiff to work in a position that would eliminate the need for the mitigation measures offered by the defendant.

**JURISDICTION AND VENUE**

This court has original and exclusive jurisdiction under Title I of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendments Act of 2008; 42 U.S.C. §12101 and 42 U.S.C. §12112(a), (b) and (d)(4) as it pertains to "Discrimination"; as implemented by 29 CFR Part 1630.14(b)(3), (c) & (d) as it pertains to employers and medical examinations and interventions.

Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2) because Plaintiffs reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

**PARTIES**

Plaintiff John Ageeb resides in Orlando, Florida and is a qualified individual with a disability within the meaning of Title I of the ADA.  The plaintiff was an employee of the defendant, which is a "covered entity" within the meaning of Title I of the ADA.  The plaintiff is regarded as having or has a physical or mental disability or impairment that substantially limits her from engaging in one or more major life activities as set forth in 29 CFR §1630.2 and 42 U.S.C. §12101.

Defendant is a "covered entity" as defined in 42 U.S.C. §12111 with its physical place of business at 1030 N Orlando Avenue, Winter Park, Florida.

**STATEMENTS OF FACT**

Defendant is an employer within the meaning and subject to the provisions of Title I of the Americans with Disabilities Act.

- 3 -

Plaintiff asked his employer for reasonable modifications as required by the Americans with Disabilities Act because he has a disability that precludes him from wearing a mask or face-covering for the many hours he was working.  Plaintiff had symptoms emerge directly from the implementation of Defendant's mitigation policy around March or April 2020 such as labored breathing, bouts of dizziness, faintness and nausea, headaches, strained eyesight, increased heart rate, anxiety,  feelings of panic, difficulty concentrating, and several times when Plaintiff was walking inside the store he had trouble walking a straight line because his balance was adversely affected. Plaintiff then noticed some other symptoms occurring even when he was not at work. His normal sleep cycle was interrupted by periods of extreme insomnia, he experienced periods of labored breathing, he started getting frequent headaches and had several minor vertigo spells.

Plaintiff approached his immediate supervisors to discuss his disability to wear a mask and ask for accommodations in early summer of 2020 around June but was told the masks were mandatory inside the building for employees.  He continued to suffer with his disability without receiving accommodation for six months.  Finally, in November he realized he could no longer harm himself and he decided to press the issue of needing management to address his request for suitable accommodation.

**On Thursday November 12, 2020,** Plaintiff punched into the timeclock at approximately 6 a.m. to begin his usual shift. He kept the mask below his nose. The Morning Shift Leader Linnea walked by and motioned for him to pull the mask up over my nose. He explained that he couldn't comply because of his disability.

Linnea stated that it was Whole Foods policy and that he had to comply. Plaintiff requested a copy of the policy to read. She replied that there wasn't a written version available and that he should come to her office and she would have the policy explained to him by phone. Plaintiff did as she requested. Upon Plaintiff entering the office, she closed the door and she also motioned for Plaintiff to stand back from her as she seemed to regard Plaintiff as an infectious threat.

Linnea gave Plaintiff her phone and Chris Sabido the Store Team Leader was on the line and informed the Plaintiff that there was a policy change but said there was no document to examine.

Plaintiff explained to Chris Sabido that Plaintiff has a disability to wear a mask because

- 4 -

wearing the mask was affecting several major life activities such as his ability to breathe properly and function physically, to communicate and care for himself. Plaintiff also stated that he was claiming his right to informed consent, claiming his right to refuse a medical intervention and that he needed an accommodation. Chris Sabido claimed that he couldn't offer any accommodation to Plaintiff because it was policy. Plaintiff told Chris Sabido that this left Plaintiff with no choice but to gather his belongings and leave for the day.

Later the same day Plaintiff received a call from two of Whole Food's Team leaders Linnea and Kevin (from grocery) and they offered the accommodation of a Leave of Absence (LOA).  This accommodation was not acceptable to Plaintiff.

Plaintiff then received another call from Amy Chabaan, a human-resources representative who suggested that Plaintiff resign from the company.  Plaintiff has worked for the Defendant for over 9 years and has an excellent work record. Plaintiff declined this accommodation and felt he was being coerced.  Later Plaintiff learned that if he had taken the LOA or submitted his resignation, he would have forfeited his right to claim recourse for discrimination against his disabilities.

**Five days later on November 17, 2020,** Plaintiff clocked into work at 6 a.m. to begin his shift. Supervisor Cat Garcia asked Plaintiff to follow her into the office where Plaintiff began a phone conversation with the Store Team Leader Chris Sabido.  Chris Sabido asked the Plaintiff what he intended to do.  Plaintiff replied that he was planning to fulfill his work obligations. Chris Sabido instructed Cat Garcia to prevent the Plaintiff from staying in the building. Chris Sabido stated he would clock Plaintiff out immediately. Plaintiff was confused and felt pressured and asked for some time to think. Cat Garcia took Plaintiff to another office where Linnea was also present. While there, Plaintiff received another call from Chris Sabido in Cat Garcia's and Linnea's presence. Chris Sabido stated that Plaintiff was guilty of gross insubordination.  Plaintiff said that he was tired of being harassed and was going back to work, both Cat and Linnea exclaimed "No!" and moved to physically block Plaintiff from going. Plaintiff then said he was going to call the police.

Plaintiff went to the break room, called the police and reported it as a crime of harassment. The police officer arrived within about 10 minutes and Plaintiff explained what had happened. Plaintiff asked the officer if he had broken any laws and the Officer replied that Plaintiff had not.  But that the private business was entitled to enforce their unwritten policies

even if the policy was counter to the law. Plaintiff asked the officer what would happen if Plaintiff tried to return to work and the officer replied that the Defendant would most likely levy a charge of trespassing. Plaintiff replied that he intended to return to work. The officer said he would consult with Linnea and Cat and start the trespass process. After 10 mins the officer gave the Plaintiff a trespass citation and explained what it meant. The police officer mentioned that Chris Sabido was on his way and that the Officer would stay to make sure things went smoothly.

Chris Sabido arrived and offered the Plaintiff the accommodation of a face shield, Plaintiff refused. Chris Sabido asked Plaintiff what the company could do to accommodate him and specifically mentioned working with the ADA for a solution. Plaintiff asked if he would be able to work without any face covering. Chris Sabido said he could not guarantee this, Plaintiff said there was no accommodation then and Chris Sabido put Plaintiff on administrative leave.

That evening before 7 p.m. Plaintiff had a 3-way call with Chris Sabido and Beverly Thomas from Team Member Services. They offered Leave of Absence or resigning. Plaintiff again refused these offers. Beverly Thomas said Plaintiff would be assigned penalties if he didn't meet his scheduled obligations for work and that three absences would result in termination and no rehire. Chris Sabido said that Plaintiff was no longer on administrative leave and Plaintiff was scheduled for the following morning. Plaintiff called out to take a personal day off following proper procedure. Plaintiff called out for the following shift. Plaintiff needed some time to think.

On November 24 Plaintiff punched in to begin his shift at 6 a.m. Chris Sabido arrived and stated that today he was issuing a third and final warning for attending work without a mask. Plaintiff was never told of the first two violations. Chris Sabido presented the Plaintiff with papers to sign. Plaintiff declared his signing was only an acknowledgement that he understood the charges. Plaintiff then left.

On December 1, 2020, at about 6 a.m. Plaintiff met with Chris Sabido and a supervisor named Keith. Chris put Plaintiff on Administrative Leave again and Plaintiff left. Plaintiff received an email from Beverly Thomas from Team Member Services in which she restated the only accommodations presented. Plaintiff had to refuse them because they did not allow Plaintiff to work with his disability, and Plaintiff felt that they retaliated against him for his

- 6 -

disability.  Plaintiff also reiterated that he would show up for his scheduled shifts since Plaintiff had not been fired.

December 17, 2020, Plaintiff received a call from Beverly Thomas of Team Member Services informing Plaintiff that defendant would not accommodate Plaintiff's disability and that Plaintiff was being fired effective immediately and was not eligible for rehire. Plaintiff was given a written separation document which did not mention of his failure to wear a mask or give any reason given for his firing.

### VIOLATION OF TITLE I OF THE ADA, 42 U.S.C. §12101 *et sequitur.*

The allegations contained in the preceding paragraphs are incorporated by reference.

Defendant is a "covered entity" 29 CFR 1630.2(b).

Title I of the ADA prohibits employment discrimination on the basis of disability.  Among other things, Title I prohibits employers from requiring medical examinations or making disability-related inquiries of employees unless such examination or inquiry is shown to be job-related and consistent with business necessity; see, 42 U.S.C. §12112(d)(4); 29 CFR §1630.14(c). An employer is entitled only to the information necessary to determine whether the employee can perform the essential functions of the job with or without reasonable accommodations.

The ADA also prohibits employers from retaliating against individuals who oppose discriminatory activities or who make charges, testify, assist, or participate in any manner in an investigation, proceeding or hearing under the ADA.  42 U.S.C. § 12203 and 29 CFR Part 1630.12(a) and (b).

The defendant has engaged in a pattern or practice of discrimination in violation of Title I and its implementing regulations by:

(1)   requiring the plaintiff to submit to unnecessary medical examinations and unnecessary disability-related inquiries, that were not job-related and consistent with business necessity and were unrelated to his ability to perform his job-related functions (see 42 U.S.C. §12112(d)(4)); and,

(2) requiring the plaintiff to submit to medical examinations and disability-related inquiries that were improperly timed and therefore not job-related and consistent with business necessity (see 42 U.S.C. §12112(d)(4)); and,

(3) requiring the plaintiff to disclose overbroad medical history and medical records (see 42 U.S.C. §12112(d)(4)); and,

(4) disclosing confidential medical information (see 42 U.S.C. §12112(d)(4)(C)); and,

(5) engaging in retaliatory acts in violation of Title V of the ADA against the plaintiff because he engaged in a protected activity under the ADA (see 42 U.S.C § 12203); and,

(6) failing to designate a representative with adequate training to assist the plaintiff in making reasonable modifications as requested, in fact, no one associated with the defendant has any knowledge, training or understanding of the legal requirements under the Americans with Disabilities Act; and,

(7) discriminate against the plaintiff on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of plaintiff's employment, employee compensation, job training, and other terms, conditions, and privileges of employment.

Specifically, Defendant has violated and continues to violate Title I of the ADA, 42 U.S.C. §12112(b) implemented by 29 CFR Part 1630 by the following:

(1) limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee; and,

(2) participating in a contractual or other arrangement or relationship that has the effect of subjecting the plaintiff to the discrimination prohibited under sub-chapter b of Section 12112 of the ADA; and,

(3) utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability; or that perpetuate the discrimination of the plaintiff who is subject to common administrative control; and,

(5) failing or refusing to make reasonable accommodations to the known physical or mental limitations of the plaintiff who is an employee, without demonstrating that any

accommodation would impose an undue hardship on the operation of the defendant's business; or denying employment opportunities, such as for advancement, from the plaintiff who is an otherwise qualified individual with a disability, wherein such denial is based on the need of the defendant to make reasonable accommodation to the physical or mental impairments of the plaintiff; and,

(6)  using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity; and,

(7)  failing to select and administer tests concerning employment in the most effective manner to ensure that, when such test is administered to a job applicant or employee who has a disability that impairs sensory, manual, or speaking skills, such test results accurately reflect the skills, aptitude, or whatever other factor of such applicant or employee that such test purports to measure, rather than reflecting the impaired sensory, manual, or speaking skills of such employee or applicant (except where such skills are the factors that the test purports to measure)

As a result of Defendant's actions and/or omissions, the plaintiff has experienced frustration, additional burden, and marginalization; is unable to independently perform his employment duties and has been excluded or isolated from his normal interaction with other employees on the job site.

Additionally, the defendant has retaliated against the plaintiffs by:

•  harassing the plaintiff about submitting to the mitigation measures, medical interventions and examinations and other health control measures, even though the defendant was duly advised by the plaintiff that the plaintiff were not subject to any health control measures by any court orders, and that the defendant was not empowered by any court order or other legal duty to impose such interventions, examinations or control measures upon the plaintiff; and,

1    • threatening the plaintiff with the termination of his employment or being falsely cited,

2    arrested or incarcerated for unrelated crimes such as trespass or disorderly conduct; and,

3    • threatening the plaintiff with public humiliation and exclusion because of his disability.

4    The defendant expresses the attitude toward the plaintiff as if the plaintiff is a direct

5    threat to others, yet has never complied with any of the individual assessment criteria, to wit:

6    29 CFR Sections 1630.2(r):

7    "Direct Threat means a significant risk of substantial harm to the health or safety
      of the individual or others that cannot be eliminated or reduced by reasonable
8    accommodation. The determination that an individual poses a 'direct threat'
      shall be based on an individualized assessment of the individual's present ability
9    to safely perform the essential functions of the job. This assessment shall be
      based on a reasonable medical judgment that relies on the most current medical
10   knowledge and/or on the best available objective evidence. In determining
11   whether an individual would pose a direct threat, the factors to be considered
      include:
12

13   (1) The duration of the risk;

     (2) The nature and severity of the potential harm;
14
     (3) The likelihood that the potential harm will occur; and
15
     (4) The imminence of the potential harm."

16   WHEREFORE, Plaintiff demands judgment against the defendant for compensatory

17   damages and that the court declare that Defendant's discriminatory actions and/or omissions

18   as set forth in this Complaint violate Title I of the ADA, 42 U.S.C. §12101 and 29 CFR Part

19   1630 et sequitur;

20   And an order enjoining the defendant, along with its officers, agents, and employees,

21   and all others in active concert or participation with them, from:

22   Engaging in discriminatory acts and/or omissions against individuals with disabilities;

23   and an order enjoining the defendant from implementing practices and policies in a

24   manner that is inaccessible to individuals with disabilities within the meaning of Title I of the

     Americans with Disabilities Act (ADA);
25

26   And ordering defendant to:

27   Comply with the requirements of Title I of the ADA, 42 U.S.C. §12101; and,

28

1
2
3

Provide appropriate auxiliary aids and services; modify policies, practices, and procedures; and/or require alternative methods to ensure the accessibility of its premises and services to individuals with disabilities; and,

4
5
6

Take such affirmative steps as may be necessary to restore, as nearly as practicable, each identifiable victim of the defendant's discriminatory conduct to the position that she would have been in but for the Defendant's conduct; and,

7
8

Take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct and to eliminate, to the extent practicable, the effects of such conduct.

9
10
11

Award monetary damages to aggrieved persons, in an appropriate amount for injuries suffered as the result of Defendant's failure to comply with the requirements of Title I of the ADA, 42 U.S.C. §12101; and,

12
13

Assess a civil penalty against the Defendant in an amount authorized by 42 U.S.C. §12101 to vindicate the public interest; and,

14

Order such other relief as the interests of justice may require.

15

**COUNT II – COMPLAINT FOR WRONGFUL TERMINATION**

16

**OF EMPLOYMENT**

17
18

The plaintiff John Ageeb sues the defendant WHOLE FOODS MARKET GROUP, INC. for wrongful termination of employment and alleges the following:

19

**JURISDICTION AND VENUE**

20
21

The District Court has original jurisdiction over claims for wrongful termination for employment and related employment agreements.

22
23

The plaintiff resides in Orange County, Florida, and his mailing address is 3205 Chelsea Street, Orlando, Florida.

24
25

The defendant is a resident in the state of Florida with its principal place of business in Orange County at the address 1030 N. Orlando Avenue, Winter Park, Florida.

26
27

The material facts for all times material to this complaint took place Orange County, Florida.

28

1

**STATEMENTS OF FACT**

2

3

4

5

6

On the date of December 17, 2020, the plaintiff's employment was terminated without notice. The plaintiff advised the defendant on several occasions, that its actions were not legal and not binding upon the plaintiff and that the defendant had no duty to act under these new terms.  Plaintiff also requested a written version of new mitigation policy from Defendant but was told there was no document for him to examine.

7

8

9

10

11

12

13

14

15

16

The defendant ignored the plaintiff's requests for an accommodation for six months. Plaintiff stated that he could not waive his rights to informed consent or accept medical interventions from his employer.  Defendant suggested that Plaintiff resign or go on unpaid leave since Plaintiff could not wear a mask without harm to himself.  Plaintiff felt so harassed by Defendant when two managers tried to physically block him from returning to work that he called a police officer to help defuse the situation.  Defendant told Plaintiff that he was guilty of gross insubordination for not waiving his rights to informed consent.  Plaintiff continued to come to his scheduled shifts because he had not been formally fired. Defendant was told he was being fired for gross insubordination for not wearing a mask. On December 17, 2020, Plaintiff was given a written separation document which did not mention his failure to wear a mask or give any reason for his firing.

17

18

Defendant stated that while it may require a forced medical intervention without any medical qualification or licensing because it was an unwritten policy, the Plaintiff is not allowed to exercise his right to informed consent.

19

**ALLEGATIONS**

20

21

Plaintiff re-alleges the foregoing and incorporates each fact herein and further alleges as follows,

22

23

24

25

26

27

28

**The plaintiff's employment was wrongfully terminated by the defendant for discriminatory reasons.  Plaintiff was fired expressly because of not his not being able to comply with defendant's unwritten change in the employment contract purportedly requiring the plaintiff to submit to medical interventions and mitigation measures and waive his rights to informed  consent, on the unfounded presumption that the plaintiff had a contagious disease, without having first made any individualized assessment as to whether or not the plaintiff was a direct threat to anyone.**

1   Beginning from the date the plaintiff was hired, he has been compensated for his labor
2   and the services he has provided the defendant at regular intervals. Plaintiff had a reasonable
3   expectation to continue working for the defendant. The defendant's termination of the
4   plaintiff's employment was in violation of our employment contract and was made without
5   notification or adequate notification to the plaintiff.

6   The terms of the employment contract are alleged herein and Plaintiff alleges that no
7   written version of a "new policy" contract was ever given to him to examine or sign.

8   The conditions of plaintiff's employment with the defendant did not require the
9   defendant to waive any of his rights.

10  The conditions of the plaintiff's employment with the defendant did not require the
11  plaintiff to accept the defendant's medical advice.

12  The conditions of the plaintiff's employment with the defendant did not include terms
13  that allowed the defendant to engage in the unlicensed practice of medicine and the defendant
    is not insured or otherwise indemnified for practicing medicine.
14

15  The conditions of the plaintiff's employment with the defendant did not include terms
16  that made the defendant the plaintiff's physician or otherwise, require the plaintiff to act upon
    medical advice given by the defendant.
17

18  **Plaintiff's employment was wrongfully terminated in discrimination based upon**
19  **disability; specifically, the plaintiff has certain** intangible private property rights which
    include the right to care for his own health and choose his own physician and health care
20
    practices while also avoiding habits and practices that he believes might ruin or risk his good
21  health.

22  The plaintiff also has the Intangible private property right to make decisions that effect
23  his health with informed consent; that is, plaintiff has a right to review all risk and benefit
24  analyses and results from relevant clinical studies prior to making any decision to adopt new
25  practices regarding his health. The defendant refused to comply with the law and violated the
26  plaintiff's property rights, specifically those enumerated under the state's Patient's Bill of
27  Rights and informed consent.

28

1    Defendant is an employer and prohibited from firing or otherwise retaliating against
2   employees, specifically the plaintiff, who report workplace safety violations or participate in
3   investigations into such violations.

4    New conditions of employment violated the long-standing safety standards adopted by
5   the Occupational Safety and Health Administration and involved the defendant's conduct
6   which included imposing a medical intervention in violation of the law prohibiting the
7   unlicensed practice of medicine.

8    Plaintiff's employment was also wrongfully terminated because the plaintiff refused to
9   accept a medical intervention sought to be imposed by the defendant where such medical
10  intervention was not permitted to be imposed by law or by the defendant and violated the
    plaintiff's right to informed consent.

11   As a direct and proximate result of the defendant's actions, the plaintiff's employment
12  was wrongfully terminated by the defendant.

13   The defendant's actions were willful and negligent.  After plaintiff's objections and
14  attempts to re-mediate the defendant on the law and his rights, the defendant continued
15  violating the law and violating the plaintiff's rights as alleged herein.

16   The defendant did not act under color of law or claim of lawful authority.  The defendant
17  had no legal duty to require the plaintiff to undertake any medical intervention or the one
18  purportedly requiring the plaintiff to wear a surgical mask or mask of any kind as a new
19  condition of his employment.

20   The plaintiff was not acting under any authority of law or court order.  Again, the
21  defendant was under no legal duty to violate the law as alleged herein, and no authority or
22  court order permitted the defendant to violate the law or violate the plaintiff's rights as alleged
23  herein.

24   The plaintiff never waived any of his rights at any time.

25   No employee or agent of the defendant is licensed, competent or authorized to give
26  medical advice, such as requiring employees such as the defendant to wear a mask or submit
27  to temperature or tissue testing or interpret the results.

28

- 14 -

Additionally, neither the defendant nor any of its employees or agents are insured or indemnified to collect vital statistics such as the taking of temperatures or tissue samples or interpreting the results.

Defendant has no authority to require the defendant to act upon its medical advice (by wearing masks) or disclosing his vital statistics (e.g. temperature), submitting to any medical examination or give tissue samples (e.g. testing) as a new condition of the plaintiff retaining his employment with the defendant.

The defendant is not authorized to violate the rights of the plaintiff, nor is the defendant required to break the law, or operate beyond its charter as a new condition of the plaintiff's employment that was never considered at the time he was hired.

Plaintiff demands a jury trial.

**WHEREFORE** plaintiff demands judgment against the defendant for wrongful termination together with costs and attorney fees and other relief as this court deems appropriate.

## COUNT III – LOST WAGES

Plaintiff re-alleges the foregoing and incorporates each fact herein and further alleges as follows,

Plaintiff was wrongfully terminated on the date of December 17, 2020 and based upon his rate of compensation, the plaintiff is entitled to lost wages in the approximate amount of four-hundred thirty-two dollars (\$432.21) *per week* from the date of December 17, 2020 through the current date, not including additional  benefits which may be calculated by the court, plus interest as calculated by the laws of the State of New York.

**WHEREFORE** plaintiff demands judgment against the defendant for lost wages as alleged herein, together with costs and attorney fees and other relief as this court deems appropriate.

## COUNT IV – BREACH OF CONTRACT

Plaintiff re-alleges the foregoing and incorporates each fact herein and further alleges as follows,

1    It was an employment contract that was commenced between the plaintiff and

2   defendant on the date of April 5, 2011 and continued without interruption until plaintiff's

3   employment was terminated as alleged herein.

4       The Plaintiff's job title was Production Cook and he was paid $22,475 per year until the

    time he was terminated as alleged herein.

5
        **WHEREFORE** plaintiff demands judgment against the defendant for breach of contract

6   together with costs and attorney fees and other relief as this court deems appropriate.

7                        **COUNT V – BREACH OF IMPLIED CONTRACT**

8
        Plaintiff re-alleges the foregoing and incorporates each fact herein and further alleges

9   as follows,

10
        It was an employment contract that was commenced between the plaintiff and

11   defendant on the date of April 5, 2011 and continued without interruption until plaintiff's

12   employment was terminated as alleged herein, although the employment agreement has not

13   changed and is still binding on both parties.

14
        The Plaintiff's job title was Production Cook and he was paid $22,475 per year until the

15   time he was terminated as alleged herein.

16       **WHEREFORE** plaintiff demands judgment against the defendant for breach of the

17   implied contract together with costs and attorney fees and other relief as this court deems

18   appropriate.

19   DATED this ⎰⎱ day of July 2021.

20

21                                                              John Ageeb, Plaintiff

22

23

24

25

26

27

28